**STATE of Minnesota, Respondent,**

v.

**Dennis Louis BABCOCK, Appellant.**

**No. C9–03–131.**

Court of Appeals of Minnesota.

Aug. 3, 2004.

Mike Hatch, Attorney General, St. Paul, MN; and Amy Klobuchar, Hennepin County Attorney, J. Michael Richardson, Assistant County Attorney, Minneapolis, MN, for respondent.

Stephen V. Grigsby, and John M. Stuart, State Public Defender, Mark F. Anderson, Assistant Public Defender, Minneapolis, MN, for appellant.

Considered and decided by PETERSON, Presiding Judge; SCHUMACHER, Judge; and HUDSON, Judge.

## OPINION

ROBERT H. SCHUMACHER, Judge.

On remand from the supreme court, appellant Dennis Louis Babcock challenges his convictions of first-degree assault of a police officer under Minn.Stat. § 609.221, subd. 2 (2000), two counts of fourth-degree assault of a police officer under Minn.Stat. § 609.2231, subd. 1 (2000), obstructing the legal process or arrest under Minn.Stat. § 609.50, subd. 1 (2000), and third-degree riot under Minn.Stat. § 609.71, subd. 3 (2000), arguing the district court erred in refusing his request to modify the patterned *Spreigl*-evidence jury instruction.

## FACTS

Babcock is a 20–year–old male, who resided with his mother, stepfather, and three siblings in south Minneapolis. In the summer of 2002, two plain-clothed police officers investigating an unrelated crime saw what they believed was a teenage boy stealing frozen pizzas from a delivery truck. The officers lost track of the juvenile and decided to pursue more pressing issues. As the officers were returning to their precinct, they again spotted the juvenile, this time sitting on the porch of Babcock's home.

One of the officers entered the porch to question the juvenile about the pizzas; the other officer was close by. The parties involved all agree the officer showed the juvenile his police identification, but there is substantial disagreement as to when, if ever, Babcock learned the two men were police officers. The juvenile responded that he did not know anything about the pizzas and entered the house. After Babcock's mother came to the front door, a verbal altercation ensued between her and the officer.

Eventually, the altercation escalated and resulted in a physical confrontation involving Babcock, his stepfather, and the two officers. As a result of his participation in the altercation, Babcock was charged with attempted second-degree murder under Minn.Stat. § 609.9, subd. 1(1) (2000), two counts of fourth-degree assault of a police officer under Minn.Stat. § 609.2231, subd. 1, obstructing the legal process or arrest under Minn.Stat. § 609.50, subd. 1, and third-degree riot under Minn.Stat. § 609.71, subd. 3.

Before trial, Babcock filed notice that he intended to assert the following defenses: defense of others, mistake of fact, self-defense, and defense of property. In response, the state filed a *Spreigl* notice, stating that it intended to introduce evidence of Babcock's prior conviction of obstruction of the legal process. The notice also provided that the state offered the prior conviction to show modus operandi, intent, knowledge, common plan or scheme, identity, and/or absence of mistake.

At the conclusion of the state's case, the district court addressed the admissibility of the proffered *Spreigl* evidence. After analyzing the appropriate factors, the district court ruled the evidence was admissible to show modus operandi and absence of mistake. The court then stated it would give a limiting instruction both before and after the evidence was admitted.

Before trial the next morning, Babcock's counsel stated to the district court: "We would be requesting a limiting instruction, Your Honor. However, with one caveat, and that is we're not satisfied with the patterned instruction." When asked if counsel had a substitute instruction in mind, counsel responded:

Well, it would basically just be deleting certain of the language and basically, I'm—I'm not certain exactly under what specific exceptions—I think—not because the Court didn't do it, because I

just don't recall clearly from yesterday under what specific exceptions the Court is admitting the—the prior event.

But what I would ask for is, essentially, an instruction that specifies it may not under any circumstance be used to impugn the defendant's character, meaning the jury may not infer that because somebody committed a particular type of act in the present case. Then to specify the evidence is being admitted to show only that—and then specify the exception, and—and what I don't want, Your Honor, is—

The district court asked counsel to clarify his request. Babcock's counsel suggested the court tell the jury

that the evidence is—is specifically limited to assisting the jury in determining whether or not he was mistaken as to the identity of the police. And—and I just can't remember the other exception under which the Court admitted it, but it would—I would—I would propose something, you know, nearly identical to the other exception.

The district court denied Babcock's requested modification to the CRIMJIGs and gave a case specific adaptation of CRIMJIG 2.01,[1] instructing the jury:

This morning the State is going to produce certain evidence concerning an oc-

currence from January 10 of this year. This evidence is being admitted for a limited purpose and that limited purpose is to assist you in determining whether Mr. Babcock committed the acts with which he is charged in this case. . . . Mr. Babcock is not being tried for and may not be convicted of any offenses other than those with which he is charged in the this case. You are not to convict him on the basis of an occurrence that may have happened on January 10 of this year. To do so might result in unjust double punishment.

After a witness testified to the *Spreigl* evidence, the district court instructed the jury as before.

Before the district court gave the jury its final instructions, Babcock objected to the use of CRIMJIG 3.16. At that point, Babcock's counsel stated to the court:: "My specific suggestion would be to simply say—keep the sentence the same but say, 'It was admitted for the limited purpose of assisting you in determining,' and then specify the exceptions, whether Mr. Babcock was mistaken as to the fact of the police identity or any other exception, period." The district court denied the request to modify the final instruction and gave a case specific adaptation of CRIMJIG 3.16.[2]

---

1. CRIMJIG 2.01 provides:

The State is about to introduce evidence of an occurrence on _____ at _____. This evidence is being offered for the limited purpose of assisting you in determining whether the defendant committed those acts with which the defendant is charged in the complaint.

The defendant is not being tried for and may not be convicted of any offense other than the charged offense(s). You are not to convict the defendant on the basis of an occurrence on _____ at _____. To do so might result in unjust, double punishment.
10 *Minnesota Practice,* CRIMJIG 2.01 (1999).

2. CRIMJIG 3.16 provides:

The State has introduced evidence of an occurrence on _____ at _____. As I told you at the time this evidence was offered, it was admitted for the limited purpose of assisting you in determining whether the defendant committed those acts with which the defendant is charged in the (indictment) (complaint).

The defendant is not being tried for and may not be convicted of any offense other than the charged offense(s). You are not to convict the defendant on the basis of any occurrence on _____ at _____. To do so might result in unjust, double punishment.
10 *Minnesota Practice,* CRIMJIG 3.16 (1999).

The jury found Babcock not guilty of attempted second-degree murder but guilty of first-degree assault under Minn. Stat. § 609.221, subd. 2, two counts fourth-degree assault under Minn.Stat. § 609.2231, subd. 1, obstructing legal process or arrest under Minn.Stat. § 609.50, subd. 1, and third-degree riot under Minn. Stat. § 609.71, subd. 3.

Following the jury verdict, Babcock appealed his convictions to this court. This court affirmed his conviction in an unpublished opinion. The supreme court granted Babcock's petition for further review and remanded the issue of Babcock's claim that the district court erred when it did not give a modified limiting instruction on the use of the *Spreigl* evidence.

## ISSUE

■ Did the district court commit reversible error when it denied Babcock's request to modify CRIMJIG 2.01 and 3.16 to include the limited purposes for which the *Spreigl* evidence was admitted?

## ANALYSIS

■ District courts are allowed considerable discretion in the selection of language for the jury instructions and a conviction will not be reversed absent an abuse of discretion. *State v. Broulik*, 606 N.W.2d 64, 68 (Minn.2000). An error in the application of law, however, is an abuse of discretion. *Kroning v. State Farm Auto. Ins. Co.*, 567 N.W.2d 42, 45–46 (Minn.1997).

■ In Minnesota, other crimes evidence is often referred to as *Spreigl* evidence after the supreme court's decision in *State v. Spreigl*, 272 Minn. 488, 139 N.W.2d 167 (1965). *Spreigl* evidence is not admissible to prove the defendant's character for the purpose of showing that he or she acted in conformity with that character, but it may be admitted for a limited purpose, or purposes, under Minn. R. Evid. 404(b), such as showing absence of mistake, intent, knowledge, common plan or scheme, and identity. *State v. Kennedy*, 585 N.W.2d 385, 389 (Minn. 1998); *see also State v. Forsman*, 260 N.W.2d 160, 167 (Minn.1977) (stating common plan or scheme exception "has evolved to embrace evidence of offenses which, because of their marked similarity in modus operandi to the charged offense, tend to corroborate evidence of the latter"). If the state wishes to introduce *Spreigl* evidence, it must provide the notice of its intent and "specify the exception to the general exclusionary rule under which it is admissible." *State v. Billstrom*, 276 Minn. 174, 178, 149 N.W.2d 281, 284 (Minn.1967).

■ Minn. R. Evid. 105 provides: "When evidence is admissible ... for one purpose but not admissible ... for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." Because *Spreigl* evidence cannot be admitted unless it falls under a specific exception, the proper scope of that evidence is limited to the purpose, or purposes, for which it was admitted. *See Kennedy*, 585 N.W.2d at 389; *Billstrom*, 276 Minn. at 176–77, 149 N.W.2d at 283 (stating "we have exhaustively discussed the almost universal principle that evidence of other unrelated crimes may not be introduced against an accused unless it comes under one of the recognized exceptions").

The supreme court in *Broulik* discussed the requirements of Minn. R. Evid. 105 in the context of *Spreigl* evidence. 606 N.W.2d at 69–71. The supreme court—after noting that federal cases interpreting the identically worded Fed.R.Evid. 105 require such an instruction only "upon re-

quest," "if requested," or "when requested"—concluded that Minn. R. Evid. 105 "contemplates a specific instruction regarding the permissible use of Rule 404(b) evidence only upon request." *Broulik*, 606 N.W.2d at 69–70.

The supreme court noted that numerous federal circuits use an approach for instructing the jury on the limited nature of *Spreigl* or other-crimes evidence different from that provided in CRIMJIG 2.01 and 3.16. *Id.* at 70–71. For example, the supreme court noted that the First Circuit's patterned other-crimes instruction provides:

> You have heard [will hear] evidence that [defendant] previously committed acts similar to those charged in this case. You may not use this evidence to infer that, because of his/her character, [defendant] carried out the acts charged in this case. You may consider this evidence only for the limited purpose of deciding: [specify purpose for which evidence was admitted].

*Id.* at 70 (citation omitted).

The supreme court also questioned the rationale behind CRIMJIG 2.01 and 3.16, noting that the comments to the CRIMJIGs state that " 'the instructions should not discuss possible inferences which may be drawn from particular evidence. . . . This should be left to the argument of the attorneys. . . . Accordingly this instruction is deliberately phrased in general language.' " *Id.* (alteration in original) (quoting 10 *Minnesota Practice* CRIMJIG 2.01 comment (1999)). But the supreme court "ha[d] not been made aware of an appellate decision that has echoed that concern." *Id.* at 71.

Based on the supreme court's discussion in *Broulik*, we have recently held that a district court errs when it denies a defendant's request for a specific limiting instruction regarding *Spreigl* evidence.

*State v. DeYoung*, 672 N.W.2d 208, 212 (Minn.App.2003). This court stated that "when requested by a defendant, CRIMJIG 2.01 and 3.16 must be modified to explain the limited purpose for which *Spreigl* evidence was admitted." *Id.* In reaching the conclusion in *DeYoung*, this court noted:

> By questioning the rationale behind the CRIMJIGs and by endorsing the practice of the federal courts, which require a specific limiting instruction when requested, [the supreme court's decision in] *Broulik* can be read to require that when a defendant requests a limiting instruction, the district court must give such an instruction.

*Id.*

Here, Babcock requested that the district court modify CRIMJIG 2.01 and 3.16 to state the specific exceptions under which the court had admitted the evidence. Although Babcock's requests were not a model of clarity, it is clear that Babcock wanted the district court to instruct the jury that the evidence was admitted for the limited purposes of demonstrating absence of mistake and modus operandi, the specific purposes for which the district court admitted the evidence. We conclude under Minn. R. Evid. 105, it was error for the district court not to instruct the jury of the limited purposes for which the *Spreigl* evidence was admitted when Babcock so requested. *See DeYoung*, 672 N.W.2d at 212.

We note this court's decision in *DeYoung* had not been filed at the time of Babcock's trial. We have no doubt that if the district court had the benefit of *DeYoung*, the court would have properly modified CRIMJIG 2.01 and 3.16 to specify the limited purposes for which the evidence was admitted. Nevertheless, *DeYoung* is an application of the supreme court's deci-

sion in *Broulik* and Babcock is entitled to have the *DeYoung* holding applied to his case.

■ We have not been made of aware of any requirement that Babcock's request must have been in writing, and we have not considered this issue. *See State v. Butcher*, 563 N.W.2d 776, 780 (Minn.App. 1997) (stating issues not briefed on appeal are waived), *review denied* (Minn. Aug. 5, 1997). But we take this opportunity to stress that if a defendant believes a particular CRIMJIG is inadequate, the preferred procedure is to present the district court with a written alternative instruction. *See Broulik*, 606 N.W.2d at 69 n. 3 (noting that to permit adequate appellate review, trial counsel should make sure any request for specific instruction language appears on record and "Minn. R.Crim. P. 26.03, subd. 18(1), permits proposed instructions to be submitted in writing").

Since this appeal, the supreme court has issued its decision in *Ture v. State*, 681 N.W.2d 9 (Minn.2004). In *Ture*, defense counsel objected to CRIMJIG 3.16 and argued the district court should use the Eighth Circuit Model Instruction 2.09.[3] *Id.* at 17. The supreme court stated that the Eighth Circuit Model Instruction 2.09 is given when other-crimes evidence has been admitted to prove *identity*; whereas, the Eighth Circuit Model Instruction 2.08 should be used when other-crimes evidence has been admitted for a purpose

other than identity. *Id.* at 18 (emphasis added). The *Spreigl* evidence in *Ture* had been admitted "for several purposes *other than to identify* Ture ... including to illustrate Ture's intent and modus operandi." *Id.* at 15 (emphasis added). The supreme court concluded in *Ture* that "under the circumstances [of that case], when the [*Spreigl* evidence] was not necessarily admitted solely for purposes of proving identity, Eighth Circuit Model Instruction 2.09 would not have been a better instruction than the adapted CRIMJIG 3.16 instruction." *Id.* at 18–19.

We read the supreme court's decision in *Ture* to hold that when a defendant requests the district court to give a jury instruction stating the *Spreigl* evidence had been admitted to show identity when the evidence had also been admitted for purposes other than identity, the district court need not give that instruction because the requested instruction was an incomplete statement of the limited purposes for which the evidence had been admitted. Here, Babcock requested the district court to specify each exception under which the evidence was admitted and thus this case falls outside the supreme court's holding in *Ture*.

■ We now turn to the question of whether the district court's denial was harmless error. *See DeYoung*, 672 N.W.2d at 212–13 (analyzing whether deni-

---

**3.** The Eighth Circuit Model Instruction provides:

> You [are about to hear] [have heard] evidence that the defendant previously committed [an act] [acts] similar to [the one] [those] charged in this case. You may use this evidence to help you decide [the manner in which the evidence will be used to prove identity—e.g., whether the similarity between the acts previously committed and the ones charged in this case suggests that the same person committed all of them.]

> Remember, however, that the mere fact that the defendant may have committed [a similar act] [similar acts] in the past is not evidence that [he][she] committed such [an act] [acts] in this case. The defendant is on trial for the crime[s] charged and for [that] [those] crime[s] alone. You may not convict a person simply because you believe [he][she] may have committed some act[s], even bad act[s], in the past.

*Manual of Model Criminal Jury Instructions for the District Courts of the Eighth Circuit* Instruction 2.09 (2003).

al of request was harmless error). In addressing whether the error was harmless

> a reviewing court must examine all relevant factors to determine whether, beyond a reasonable doubt, the error did not have a significant impact on the verdict.... If the error might have prompted the jury to reach a harsher verdict than it might otherwise have reached, the defendant is entitled to a new trial.

*Id.* at 212 (quotations omitted).

In *DeYoung,* this court concluded the district court's error was harmless because the case against the appellant was strong and both the prosecutor and the defense counsel explained the limited use of the *Spreigl* evidence in their closing arguments. *Id.* at 212–13.

The facts of this case are substantially different from the facts in *DeYoung.* The district court concluded near the close of the state's case, this is "a severely challenged case, the strength of which is questionable." Furthermore, unlike in *DeYoung,* the closing arguments here did not state the limited purpose for which the *Spreigl* evidence had been admitted. Babcock's counsel did not mention the *Spreigl* evidence during his closing argument and did not explain the limited purpose of the *Spreigl* evidence.

> Prosecutor: [Y]ou heard what happened in January of this year. That gives you at least a glimpse of what's going on. That was an example of Mr. Babcock, who knew this person was a police officer. There's no doubt about that. He was in uniform even. That didn't stop Mr. Babcock from attacking a police officer.
>
> Defense: Objection, 404(a).
>
> Court: Jurors, just recall the instruction that I gave you several times about the purpose for which that evidence was admitted. Please, continue.

> . . . .
>
> Prosecutor: In that case, [Babcock], knowing this was a police officer, still attacked him. He admitted it. So why would he do it here? I don't know, but he did it then. So again—
>
> Defense: Same objection, Your Honor.
>
> Court: All right. Please continue. Let's move on to something new, please.

The prosecutor's argument is far too close to suggesting the jury use the evidence not for the specific purposes for which it had been admitted, but as impermissible character evidence. *Compare State v. Wermerskirchen,* 497 N.W.2d 235, 241 (Minn.1993) (concluding "our cases do not preclude the use of other-crime evidence to establish common scheme or plan, *i.e.,* to establish that the act occurred") *with* Minn. R. Evid. 404(b) ("Evidence of another crime, wrong, or act is not admissible to prove the character of a person in order to show action in conformity therewith.").

Considering all the relevant factors in this case, we cannot conclude beyond all reasonable doubt that the jury's verdict was not significantly affected by the district court's denial of Babcock's request to modify CRIMJIG 2.01 and 3.16. Thus, Babcock is entitled to a new trial and his conviction is reversed.

### DECISION

The district court erred when it denied Babcock's request to modify CRIMJIG 2.01 and 3.16 so that it specified the limited purposes for which the *Spreigl* evidence had been admitted. Under the circumstances here, the error was not harmless.

**Reversed and remanded.**