# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A15-0982

State of Minnesota,
Respondent,

vs.

Ian Christopher Mitchell,
Appellant.

**Filed May 31, 2016**
**Affirmed in part and remanded**
**Schellhas, Judge**

Hennepin County District Court
File No. 27-CR-03-085208

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Linda K. Jenny, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Suzanne M. Senecal-Hill, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Schellhas, Judge; and Stauber, Judge.

## S Y L L A B U S

Minnesota Statutes section 609.585 (2002), which provides that "a prosecution for or conviction of the crime of burglary is not a bar to conviction of or punishment for any other crime committed on entering or while in the building entered," does not authorize a district court to enter convictions or impose sentences on multiple counts of burglary arising from a single course of conduct.

**O P I N I O N**

**SCHELLHAS**, Judge

Appellant argues that the district court abused its discretion by denying his mistrial motion and seeks a new trial on charges of first-degree burglary. He also makes pro se arguments, including that the district court erred by entering convictions and imposing sentences on multiple counts of burglary arising from a single course of conduct. We affirm in part and remand.

**FACTS**

Appellant Ian Christopher Mitchell began a dating relationship with K.K. in October 2003, which K.K. ended on November 29 in part because of conflicts about sex.[1] Around 2 a.m. on November 30, Mitchell entered K.K.'s residence without her permission; when K.K. confronted Mitchell, he physically assaulted her and fled, leaving lacerations on her scalp and abrasions on her shoulder and knee. Within the hour, police arrested Mitchell as he started to drive away from his residence. He had a knife in his vehicle.

Respondent State of Minnesota charged Mitchell with one count of first-degree burglary (assault) and one count of first-degree burglary (dangerous weapon). Mitchell's trial resulted in a hung jury. At his second trial on both counts of first-degree burglary, Mitchell moved for a mistrial during a break in the state's direct examination of K.K. He argued that K.K.'s nonresponsive answer to a question by the prosecutor resulted in

---

[1] K.K. testified that Mitchell did not respect her expressed preferences against "spanking," "vulgar" talk, and "being physically handled in a rough manner" during sex.

2

irreparable prejudice to him. The district court denied the mistrial motion, and the jury found Mitchell guilty as charged.

Mitchell failed to appear for sentencing in January 2005, and sentencing was delayed for more than ten years. Mitchell appeared for sentencing in March 2015, and the district court entered convictions on both counts of first-degree burglary and sentenced Mitchell to 52 months' imprisonment for each count of first-degree burglary, to be served concurrently.

This appeal follows.

## ISSUES

I. Did the district court abuse its discretion by denying Mitchell's motion for a mistrial?

II. Did the district court err by entering convictions and imposing sentences on multiple counts of burglary arising from a single course of conduct?

III. Do Mitchell's pro se arguments have merit?

## ANALYSIS

**I. Mistrial motion**

"A mistrial should not be granted unless there is a reasonable probability that the outcome of the trial would be different if the event that prompted the motion had not occurred." *State v. Mahkuk*, 736 N.W.2d 675, 689 (Minn. 2007) (quotation omitted). "[Appellate courts] review the denial of a motion for a mistrial for an abuse of discretion because the district court is in the best position to evaluate the prejudicial impact, if any,

3

of an event occurring during the trial." *State v. Bahtuoh*, 840 N.W.2d 804, 819 (Minn. 2013).

Mitchell's mistrial motion was based on the following testimonial exchange:

> PROSECUTOR: Now, your relationship [with Mitchell] to [November 21, 2003,] had involved sexual relations?
> K.K.: Yes, it had.
> PROSECUTOR: And you were okay with that?
> K.K.: Okay with what?
> PROSECUTOR: You were agreeable in the course of your relationship to have sexual relations?
> K.K.: We might want to discuss this before I answer that.
> PROSECUTOR: Did you have sexual relationships—
> K.K.: Yes.
> PROSECUTOR: —with Mr. Mitchell prior to [November 21, 2003]?
> K.K.: Yes.

Mitchell argues that irreparable prejudice resulted from K.K.'s nonresponsive answer to the prosecutor's question whether K.K. was "agreeable in the course of [her] relationship to have sexual relations" with Mitchell. Mitchell contends that the nonresponsive answer "left the jury with a clear impression that the sexual encounters [between K.K. and Mitchell] were not always consensual." He also claims that "there was no way to minimize the impact this had on the jury."

But as noted by the state, a juror would not necessarily infer from K.K.'s nonresponsive answer that Mitchell sexually assaulted K.K. during the course of their relationship. "Agreeable" may mean "[r]eady to consent or submit," but it may also mean "[t]o one's liking" or "pleasing." *The American Heritage Dictionary of the English Language* 35 (4th ed. 2006) [hereinafter *American Heritage Dictionary*]. Moments after giving her nonresponsive answer, K.K. testified that sex with Mitchell included activities

4

that she found disagreeable. In this context, the nonresponsive answer appears to have been innocuous. Even if we accept Mitchell's argument that K.K.'s nonresponsive answer created a risk that the jury improperly considered an implied prior bad act by Mitchell, such a risk is not grounds for a mistrial unless it is tantamount to "a reasonable probability that the outcome of the trial would be different" in the absence of the question and answer. *Mahkuk*, 736 N.W.2d at 689 (quotation omitted).

The state did not pursue a theory that Mitchell entered K.K.'s residence with an intent to sexually assault her. Instead, the prosecutor asserted that Mitchell was "angry, frustrated, [and] bitter" about the breakup and hypothesized that Mitchell's motive was to "confront," "scare," "threaten," or "assault" K.K. At trial, K.K. testified that on November 29, 2003, she ended her dating relationship with Mitchell in "a very escalated, argumentative, accusatory conversation that ended pretty poorly." After falling asleep that night, K.K. awoke to see Mitchell standing in her bedroom doorway. Mitchell did not have K.K.'s permission to enter her residence. K.K. confronted Mitchell, first verbally and then by following him when he walked away. Mitchell then "started to come after [K.K.]," grabbed her arm, knocked her to the ground, and hit her on the head three or four times before fleeing. K.K. did not know whether Mitchell used an object to hit her. When the police arrested Mitchell a short time later, they found a knife in his vehicle. The knife belonged to K.K.'s father, with whom K.K. resided; just hours before the burglary, the knife was in K.K.'s kitchen, and it was not in K.K.'s kitchen following the burglary. The knife had a small smear of Mitchell's blood on or near the handle. A sharp object consistent with the knife caused the lacerations to K.K.'s head.

5

In light of the state's theory of the crime and the ample evidence of Mitchell's guilt, we conclude that no reasonable probability exists that Mitchell would have been acquitted absent the prosecutor's question and K.K.'s nonresponsive answer. We defer to the district court's evaluation of prejudicial impact, *Bahtuoh*, 840 N.W.2d at 819, and conclude that the district court did not abuse its discretion by denying Mitchell's motion for a mistrial.

## II.    Multiple convictions and sentences

In his pro se supplemental brief, Mitchell argues that his convictions violate section 609.04 (2002) because first-degree burglary (dangerous weapon) is an included offense of first-degree burglary (assault). He also argues that the district court violated section 609.035 (2002) by imposing a sentence for each conviction because each conviction arose from a single course of conduct. Although Mitchell did not argue against his multiple convictions and sentences in district court, we address his arguments here. *See Spann v. State*, 740 N.W.2d 570, 573 (Minn. 2007) ("[The supreme court] ha[s] held that an appellant does not waive claims of multiple convictions or sentences by failing to raise the issue at the time of sentencing." (citing *Ture v. State*, 353 N.W.2d 518, 523 (Minn. 1984))).

 "Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included offense, but not both." Minn. Stat. § 609.04, subd. 1. "A crime necessarily proved if the crime charged were proved" is an "included offense." *Id.* "To determine whether an offense is an included offense falling under [section 609.04], a court examines the elements of the offense instead of the facts of the particular case." *State v. Bertsch*, 707 N.W.2d 660, 664 (Minn. 2006).

The elements of first-degree burglary (dangerous weapon) are (1) entry of a building without consent; (2) entry with intent to commit a crime, or commission of a crime while in the building; and (3) possession of a dangerous weapon "when entering or at any time while in the building." Minn. Stat. § 609.582, subd. 1 (2002). The elements of first-degree burglary (assault) are (1) entry of a building without consent; (2) entry with intent to commit a crime, or commission of a crime while in the building; and (3) assault of a person "within the building or on the building's appurtenant property." *Id.* Since each crime requires proof of an element that the other does not, neither crime necessarily is proved when the other is proved. First-degree burglary (dangerous weapon) is not a lesser-included offense of first-degree burglary (assault).

But section 609.04 does more than preclude conviction of both an offense and an included offense. "[S]ection 609.04 bars multiple convictions under different sections of a criminal statute for acts committed during a single behavioral incident."[2] *State v. Chavarria-Cruz*, 839 N.W.2d 515, 523 (Minn. 2013) (quotation omitted). And unless a statutory exception applies, "if a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses." Minn. Stat. § 609.035, subd. 1. "[D]eciding whether the district court's imposition of two sentences was barred by section 609.035, subdivision 1, requires [an appellate court] to determine first whether the conduct underlying the offenses involved a single course of conduct."

---

[2] "Legal authorities use the terms 'single course of conduct' and 'single behavioral incident' interchangeably." *State v. Drljic*, 876 N.W.2d 350, 353 n.1 (Minn. App. 2016) (quotation omitted).

*State v. Jones*, 848 N.W.2d 528, 533 (Minn. 2014). "If so, [the appellate court] then consider[s] whether an exception to section 609.035, subdivision 1, applies." *Id.*

Here, one of Mitchell's burglary convictions was based on Minn. Stat. § 609.582, subd. 1(b) (dangerous weapon), and the other burglary conviction was based on Minn. Stat. § 609.582, subd. 1(c) (assault). The state does not contest that both convictions arose from a single course of conduct, arguing instead that a statutory exception to the general rule permits Mitchell's multiple convictions and sentences. That exception provides that "a prosecution for or conviction of the crime of burglary is not a bar to conviction of or punishment for any *other* crime committed on entering or while in the building entered." Minn. Stat. § 609.585 (emphasis added). The state reads section 609.585 to mean that conviction and punishment on one count of burglary does not preclude conviction or punishment on another count of burglary arising from the same course of conduct, so long as the two counts of burglary involve different statutory elements, i.e., each is an "other crime."

But the state offers little to support its reading of the statute, and we have found no Minnesota authority that directly answers the question whether "any other crime," as used in section 609.585, includes another *burglary* crime. Existing caselaw that is not directly on point seems to contradict the state's reading of section 609.585. *See, e.g.*, *State v. Holmes*, 778 N.W.2d 336, 341 (Minn. 2010) ("The phrase 'any other crime' means a crime that requires proof of different statutory elements than the crime of burglary." (quoting section 609.585)); *State v. Jackson*, 749 N.W.2d 353, 358 (Minn. 2008) ("Burglary is a serious crime, and punishment is allowed for both the burglary and the crime committed in

8

the dwelling." (citing section 609.585)); *State v. Hartfield*, 459 N.W.2d 668, 670 (Minn. 1990) (stating that section 609.585 "contains an exception allowing sentencing for both a burglary and one of the offenses committed during a burglary even if it could otherwise be said that they were both committed as part of a single behavioral incident").

In one published opinion, we affirmed multiple convictions of and sentences for single-course-of-conduct first-degree burglary (occupied dwelling) and first-degree burglary (assault). *State v. Hodges*, 384 N.W.2d 175, 178 n.1, 182–83 (Minn. App. 1986), *aff'd as modified*, 386 N.W.2d 709 (Minn. 1986). We affirmed the multiple convictions based on the multiple-victims exception to section 609.04. *Id.* at 182. And we affirmed the multiple sentences without analysis, merely stating that "defendant is not entitled to vacation of [the] sentences because burglary under section 609.585 is expressly exempted from the provisions of section 609.035." *Id.* at 183. On review, the supreme court vacated one of the convictions, reasoning that "the [multiple-victims] exception does not allow [multiple] burglary convictions simply because [multiple] people were present in the house when it was burglarized." 386 N.W.2d at 711. The supreme court did not address our multiple-sentences decision or consider whether the multiple convictions or sentences could be affirmed under section 609.585. Similarly, in *State v. Crockson*, we held that "the district court erred by adjudicating guilt on both [counts of first-degree burglary] when they arose from the same course of criminal conduct," pointing to section 609.04's bar against multiple convictions but making no mention of section 609.585's burglary exception. 854 N.W.2d 244, 246, 248 (Minn. App. 2014), *review denied* (Minn. Dec. 16, 2014).

9

Focusing on the language "any other crime" in section 609.585, our independent statutory interpretation confirms what the caselaw suggests. In interpreting a statute, "[t]he first step is to examine the language of the statute to determine if it is ambiguous. Statutory language is ambiguous only if, as applied to the facts of the particular case, it is susceptible to more than one reasonable interpretation." *Dupey v. State*, 868 N.W.2d 36, 39 (Minn. 2015) (citation omitted). "Other" may mean "[d]ifferent from that or those implied or specified." *American Heritage Dictionary*, *supra*, at 1246. Here, burglary is the crime specified. We conclude that the only reasonable interpretation of "any other crime" is a crime different from burglary. We therefore enforce the plain language of the statute and remand for the district court to vacate Mitchell's conviction and sentence as to one of the two counts of first-degree burglary. *See Dupey*, 868 N.W.2d at 39 ("If the statutory language is unambiguous, [the court] must enforce the plain meaning of the statute and not explore the spirit or purpose of the law.").

III.    **Other pro se arguments**

Mitchell argues that the district court judge "impermissibly injected his personal opinion as to what the evidence showed" by speculating that K.K.'s nonresponsive answer indicated that "maybe she was confused about . . . whether she had ever consented to spanking or rough talk or something like that" and by stating that "that's how I took the testimony." Mitchell does not appear to argue that the judge's statement indicated bias; rather, his argument is that the judge improperly "expressed [his] personal opinion to the jury as to what [K.K.] was thinking" when she gave the nonresponsive answer. But the

10

record shows that the judge's comments were made outside the presence of the jury, and Mitchell's complaint about the judge therefore is meritless.

Mitchell also appears to argue that the constitutional prohibition against double jeopardy is violated by statutory exceptions to the general rule against multiple convictions and sentences, that prosecutorial misconduct requires reversal of his convictions, and that insufficient evidence supports his conviction of first-degree burglary (dangerous weapon). Mitchell's double-jeopardy and prosecutorial-misconduct arguments are forfeited as wholly unsupported by briefing. *See State v. Sontoya*, 788 N.W.2d 868, 876 (Minn. 2010) (declining to consider pro se argument where appellant cited neither record nor legal support of argument). Any sufficiency-of-the-evidence argument is based on Mitchell's attempt to deny the existence of record evidence that he possessed a knife during the burglary. But the state presented evidence that Mitchell possessed a knife when he was arrested shortly after the burglary. The evidence also showed that the knife belonged to K.K.'s father, with whom K.K. resided; it was in K.K.'s kitchen just hours before the burglary, and it was not in K.K.'s kitchen after the burglary. We assume that the jury believed the state's evidence and view the evidence in the light most favorable to the guilty verdict. *State v. Moore*, 846 N.W.2d 83, 88 (Minn. 2014.) So viewed, the circumstantial evidence is sufficient to prove that Mitchell possessed the knife at some point during the burglary, because "the circumstances proved are consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *Id.* (quotations omitted).

11

## D E C I S I O N

Because "any other crime," as used in section 609.585, does not include another burglary crime, the district court erred by entering convictions and imposing sentences on multiple counts of burglary arising from a single course of conduct.

**Affirmed in part and remanded.**